STATE OF CONNECTICUT v. LASHAWN R. JENNINGS
(AC 29663)

Gruendel, Alvord and Sullivan, Js.

Argued October 15, 2010—officially released January 4, 2011

*Temmy Ann Pieszak*, chief of habeas corpus services, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, *Jonathan C. Benedict*, former state's attorney, and *Nicholas J. Bove, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Lashawn R. Jennings, appeals from the judgment of conviction, rendered after a jury trial, of larceny in the third degree in violation of General Statutes (Rev. to 2007) § 53a-124 (a) (2)[1] and conspiracy to commit larceny in the third degree in violation of General Statutes §§ 53a-48 and 53a-124 (a) (2). On appeal, the defendant claims that (1) the evidence was insufficient to sustain her conviction, (2)

---

[1] We note that § 53a-124 (a) (2) was amended in 2009 to require the value of the stolen property to exceed $2000, increased from the previously required $1000. See Public Acts 2009, No. 09-138, § 3, codified at General Statutes (Sup. 2010) § 53a-124 (a) (2). For purposes of convenience, we refer to the 2007 codification of the statute, which is the one that was in effect at the time of the offense in the present case. All references to § 53a-124 (a) (2) are to the 2007 revision.

she was deprived of her constitutional right to confrontation under the sixth amendment to the United States constitution, (3) the court improperly failed to require compliance with a subpoena duces tecum issued by defense counsel and (4) the court improperly refused to instruct the jury in accordance with her proposed charge on value. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 30, 2007, David Gugliotti, a detective with the Stratford police department, and a few other officers were dispatched to the Wal-Mart store in Stratford in response to a report of a shoplifting in progress. Upon arrival, Gugliotti went to the store's loss prevention office and joined its security personnel. The office contained a computer that allowed its security personnel to view videotape from cameras positioned throughout the store. Those cameras recorded activity in the store as it occurred, and Gugliotti arrived in time to witness part of the shoplifting incident. He observed the defendant and two other individuals standing near a shopping cart that contained a clear plastic tote with a green lid. All three individuals were maneuvering and concealing DVDs within that tote. One of the individuals then grabbed a suitcase from the store's shelf, and they all proceeded to remove the items from the tote and to place them inside the suitcase.

While the defendant remained inside the store, the other two individuals pushed the shopping cart, which contained the suitcase, to a location near the exit and left it there. Those two individuals then left the store and promptly were apprehended by the officers who had remained outside of the building. The defendant subsequently walked up to the cart and pushed it slightly. At that point, before she actually left the store premises, she was detained. None of the three individuals had made any attempt to pay for the DVDs in the

suitcase. After the arrests, Gugliotti determined that the suitcase contained 101 DVDs. All of the DVDs were given to a store employee to scan at a register. The receipt from that register indicated that the DVDs totaled $1822.72.

By long form information, the defendant was charged with larceny in the third degree and conspiracy to commit larceny in the third degree. The case was tried before the jury on July 18, 2007. Gugliotti was the state's only witness; the defense called no witnesses. The jury returned a verdict finding the defendant guilty of both charges. The court accepted the verdict and sentenced the defendant to a total effective term of three years incarceration. This appeal followed.

I

The defendant first claims that there was insufficient evidence to support her conviction of the crimes of larceny in the third degree and conspiracy to commit larceny in the third degree. Specifically, she argues that the state failed to present any competent evidence of the market value of the DVDs and that it failed to present evidence sufficient to satisfy the taking element of the crime of larceny.

We apply a two part test in reviewing sufficiency of the evidence claims. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and

logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, 93 Conn. App. 739, 748–49, 890 A.2d 591 (2006), appeal dismissed, 281 Conn. 817, 917 A.2d 959 (2007).

To convict the defendant of larceny in the third degree, as the commission of that crime is alleged in the state's information, the state bore the burden of proving beyond a reasonable doubt that (1) she committed larceny as defined in General Statutes § 53a-119 and (2) the value of the property exceeded $1000. General Statutes (Rev. to 2007) § 53a-124 (a) (2). "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." General Statutes § 53a-119.

A

The defendant claims that the state failed to prove by competent evidence that the value of the property involved exceeded $1000, which is an essential element of the crime of larceny in the third degree.[2] See *State* v. *Scielzo*, 190 Conn. 191, 200, 460 A.2d 951 (1983). The defendant challenged the adequacy of the state's evidence by making motions for acquittal at the close of the state's case and after the defense rested and also

---

[2] "[T]he [d]ue [p]rocess [c]lause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (Internal quotation marks omitted.) *State* v. *Torres*, 111 Conn. App. 575, 579, 960 A.2d 573 (2008), cert. denied, 290 Conn. 907, 964 A.2d 543 (2009).

by filing a postconviction motion for a judgment of acquittal. She concedes, however, that she did not assert in the trial court the same arguments in support of her insufficiency of the evidence claim that she now raises on appeal. Nevertheless, her claims are reviewable by this court. "[A]ny defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs [set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)]. Accordingly, we conclude that no practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim and, thus, review the challenge as we do any other properly preserved claim." (Internal quotation marks omitted.) *State* v. *Torres*, 111 Conn. App. 575, 579, 960 A.2d 573 (2008), cert. denied, 290 Conn. 907, 964 A.2d 543 (2009).

The gravamen of the defendant's claim is that Gugliotti was not a competent witness to testify as to the value of the 101 DVDs. The defendant argues that he had no independent knowledge of their value and was simply reciting a value from a document, i.e., the store's receipt, even though that document was not an exhibit at trial. The following additional facts and procedural history are relevant to our resolution of this claim.

During direct examination, the prosecutor asked Gugliotti whether he had determined the value of the items in the suitcase and how that value had been determined. Gugliotti responded: "What we traditionally do in a . . . shoplifting case is, we have that store take all the items and run them through the register and print us out a receipt of what the total would have been." When asked what that amount was, Gugliotti stated that he could not recall the exact amount. The court then allowed Gugliotti to refresh his recollection by looking at a copy of his report. After indicating that his recollection was refreshed, Gugliotti testified that

the total amount was $1822.72. Defense counsel did not object to the prosecutor's questions or object to Gugliotti's testimony on the ground that it was hearsay or that Gugliotti was not a competent witness. Gugliotti's testimony was the only evidence of value produced by the state; neither the store's receipt nor the DVDs were exhibits at trial.

Gugliotti's testimony, absent objection by the defendant, was sufficient proof that the total value of the 101 DVDs exceeded $1000. "If [inadmissible] evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of the rational persuasive power it may have. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. . . . This principle is almost universally accepted. . . . The principle applies to any ground of incompetency under the exclusionary rules. It is most often invoked in respect to hearsay, but it has been applied to evidence vulnerable as secondary evidence of writings, opinions, evidence elicited from incompetent witnesses or subject to a privilege, or subject to objection because of the want of authentication of a writing, of the lack-of-knowledge qualification of a witness, or of the expertness qualification." (Internal quotation marks omitted.) *State* v. *Carey*, 228 Conn. 487, 496, 636 A.2d 840 (1994), quoting 1 C. McCormick, Evidence (4th Ed. 1992) § 54, pp. 219–20; see also *State* v. *King*, 289 Conn. 496, 521, 958 A.2d 731 (2008).

The defendant additionally claims that the evidence was insufficient to prove the market value of the DVDs because the store's "price tags" would be an inadequate measure of their value as a matter of law. She argues that evidence of market value must include evidence of actual transactions between buyers and the store to establish what a buyer would be willing to pay for the DVDs at issue. In other words, according to the defendant, the marked price is not equivalent to the

market price without evidence of actual sales.[3] We disagree.

The value of the DVDs would be "their market value, that is, the price at which they would probably have been sold in the regular course of business at the time when and the place where the attempted theft occurred, and any evidence bearing on that question could properly be considered." *State* v. *Gyuro*, 156 Conn. 391, 398, 242 A.2d 734, cert. denied, 393 U.S. 937, 89 S. Ct. 301, 21 L. Ed. 2d 274 (1968). It was not necessary for the state to introduce the articles themselves into evidence. Id.

Although we are not bound by the precedent of the statutory Appellate Session of the Superior Court; *State* v. *Kluttz*, 9 Conn. App. 686, 694 n.8, 521 A.2d 178 (1987); we find persuasive the reasoning of that court in *State* v. *White*, 37 Conn. Sup. 796, 437 A.2d 145 (1981). In *White*, the defendant challenged the trial court's evidentiary ruling allowing the admission of price tags to establish the market value of garments stolen from a department store. The Appellate Session concluded that the trial court did not err in its ruling: "The weight of authority supports the view that the terms market value and selling price are synonymous . . . and that *any evidence* which reasonably tends to show the present value of the stolen goods may be admitted. . . . A number of courts have applied this principle to admit price tags on the issue of value, since price tags generally reflect the market value of goods for sale." (Citations omitted; emphasis in original.) Id., 800–801.[4] We agree

---

[3] The value of stolen property for a larceny charge is ascertained as follows: "[V]alue means the market value of the property or services at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property or services within a reasonable time after the crime. . . ." General Statutes § 53a-121 (a) (1). In this case, no evidence was presented as to the replacement value of the DVDs. The state presented evidence only as to their market value.

[4] In reaching that conclusion, the Appellate Session quoted from and followed the reasoning set forth in the dissenting opinion of *State* v. *Coleman*, 19 Wn. App. 549, 555, 576 P.2d 925 (1978): "In this day and age, items bought

and therefore reject the defendant's argument that actual sales were necessary to establish the market value of the stolen DVDs.

## B

The defendant next claims that the evidence was insufficient to prove the taking element of the crime of larceny. She argues that in order for the property to have been taken, it had to be carried away. According to the defendant, there was no evidence of a taking because the testimony at trial established that she was inside the store and had not transported any of the items outside of the store when she was apprehended. This claim is without merit.

"Connecticut courts have interpreted the essential elements of larceny as (1) the wrongful taking *or* carrying away of the personal property of another; (2) the existence of a felonious intent in the taker to deprive the owner of [the property] permanently; and (3) the lack of consent of the owner." (Emphasis added; internal quotation marks omitted.) *State* v. *Hyde*, 104 Conn. App. 574, 578, 935 A.2d 639 (2007), cert. denied, 285 Conn. 910, 940 A.2d 809 (2008). The word taking, which is not defined in the Penal Code, was judicially interpreted in *State* v. *Toro*, 62 Conn. App. 635, 642, 772 A.2d 648, cert. denied, 256 Conn. 923, 774 A.2d 141 (2001). The court looked to the ordinary usage of that word. "A criminal taking is [t]he act of seizing an article, *with or without removing it,* but with an implicit transfer of possession or control." (Emphasis added; internal quotation marks omitted.) Id. The testimony at trial

at retail are customarily purchased at the price shown on the price tags attached to the merchandise. Although the price listed on the tags was not necessarily conclusive evidence of the market value of the merchandise in this case, it was at least substantial evidence on which a jury could reasonably rely in determining that the market value of the goods stolen was in fact that which was shown on the price tag." (Internal quotation marks omitted.) *State* v. *White*, supra, 37 Conn. Sup. 800.

established that the defendant and her accomplices placed 101 DVDs in a plastic tote, that one of the accomplices removed a suitcase from the shelf in the store and placed it in the shopping cart, that all three individuals removed the DVDs from the plastic tote and transferred them to the suitcase, that the two accomplices then pushed the cart containing the suitcase to a location near the store's exit and that the defendant then walked over to the cart and pushed it slightly before being detained inside the store.

In reviewing a sufficiency of the evidence claim, it is well established that "the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Riser*, 70 Conn. App. 543, 552, 800 A.2d 564 (2002). Moreover, "[i]n considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *State* v. *Fauntleroy*, 101 Conn. App. 144, 153, 921 A.2d 622 (2007).

Clearly, the furtive actions of the defendant and her accomplices in concealing the DVDs and moving them to an area where they quickly could be removed from the store were sufficient to establish the requisite taking element of larceny in the third degree. Neither the statutes nor the case law requires that the property actually

be removed from the owner's premises, and, accordingly, the defendant's claim fails.

## II

The defendant's next claim is that she was deprived of her constitutional right to confrontation under the sixth amendment to the United States constitution. She argues that this constitutional right was violated when (1) Gugliotti provided testimonial hearsay as to the value of the DVDs and (2) the court precluded defense counsel from cross-examining Gugliotti as to the names of the movies recorded on the DVDs.

## A

The defendant claims that Gugliotti's testimony as to the value of the 101 DVDs constituted testimonial hearsay, depriving her of her constitutional right to confrontation under the rule established in *Crawford* v. *Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).[5] She argues that Gugliotti simply recited the value that had been reflected on the store's receipt, and, therefore, she was unable to cross-examine "the actual declarant, not the person repeating the hearsay." She claims that the "statement" of the value was hearsay and was testimonial because the receipt was prepared to provide evidence against the defendant in a criminal proceeding.

"[T]he state's use of hearsay evidence against an accused in a criminal trial is limited by the confrontation

[5] "Under *Crawford* v. *Washington*, supra, 541 U.S. 68, the hearsay statements of an unavailable witness that are testimonial in nature may be admitted under the sixth amendment's confrontation clause only if the defendant has had a prior opportunity to cross-examine the declarant. Hearsay statements that are nontestimonial in nature are not governed by the confrontation clause, and their admissibility is governed solely by the rules of evidence." *State* v. *Slater*, 285 Conn. 162, 169–70, 939 A.2d 1105, cert. denied, 553 U.S. 1085, 128 S. Ct. 2885, 171 L. Ed. 2d 822 (2008).

clause of the sixth amendment. . . . The sixth amendment to the constitution of the United States guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. This right is secured for defendants in state criminal proceedings. . . . [T]he primary interest secured by confrontation is the right of cross-examination." (Citation omitted; internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 712, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006).

As previously noted in part I A of this opinion, the defendant did not object to Gugliotti's testimony concerning the preparation of the register receipt and the amount reflected on it. She concedes that her claim was not preserved properly at trial and now seeks review under *State* v. *Golding*, supra, 213 Conn. 233. Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id., 239–40.

We conclude that the alleged violation fails under the second prong of *Golding* and is not reviewable. It is not of constitutional magnitude because the information on the receipt, as testified to by Gugliotti, was not a testimonial hearsay statement as defined in *Crawford*. "[T]he confrontation clause applies only to *statements* that are testimonial in nature." (Emphasis added.) *State* v. *Smith*, 289 Conn. 598, 622, 960 A.2d 993 (2008). "In

*Crawford*, the Supreme Court declined to spell out a comprehensive definition of testimonial . . . . Instead, the court defined a testimonial statement in general terms: A solemn declaration or affirmation made for the purpose of establishing or proving some fact. . . . The court did note, however, three formulations of th[e] core class of testimonial statements . . . [1] ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially . . . [2] extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions . . . [and 3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . ." (Internal quotation marks omitted.) *State* v. *Madigosky*, 291 Conn. 28, 44–45, 966 A.2d 730 (2009).

In the present case, the defendant's argument that the information contained in the store receipt is a testimonial statement under *Crawford* is not persuasive. The core class of testimonial statements described in *Crawford* are the declarations of individuals, either recited by other individuals who heard the statements or incorporated in affidavits, deposition transcripts or similar documents. A store receipt is not the statement of an individual; the receipt, unlike an individual, cannot be cross-examined. It makes no difference whatsoever whether the receipt was prepared in anticipation of trial or for some other purpose. The total amount reflected on the store receipt is a mathematical sum. The principal purpose of cross-examination, which is to test the credibility of a witness and hence the truth of his or her testimony; *In re Keijam T.*, 221 Conn. 109, 124,

602 A.2d 967 (1992); has no applicability under these circumstances.

The value of the DVDs, as reflected in the store receipt, was recited by Gugliotti during direct examination. The defendant did not object to that testimony. The information was not a testimonial statement as defined in *Crawford*, despite the constitutional tag placed on the alleged violation by the defendant. See *State* v. *Burgos-Torres*, 114 Conn. App. 112, 117, 968 A.2d 476, cert. denied, 293 Conn. 908, 978 A.2d 1111 (2009). The claim itself reveals that the alleged violation does not involve testimonial hearsay, and, accordingly, the defendant's claim is not reviewable.

## B

The defendant also claims that the court's limitation on her cross-examination of Gugliotti deprived her of her right to confront an adverse witness. When defense counsel asked Gugliotti to name the movies on the DVDs, the prosecutor objected on the ground of relevance and the court sustained the objection.[6] The defendant argues that the prohibited questioning was relevant

---

[6] On cross-examination, defense counsel asked the following questions:

"[Defense Counsel]: The—let's talk about those 101 DVDs. You testified that those were the value—or they are valued at $1822.72.

"[The Witness]: According to Wal-Mart, yes.

"[Defense Counsel]: Now, the DVDs, those 101 DVDs; what movie?

"[The Witness]: Come again?

"[Defense Counsel]: What—what—DVDs are movies, right?

"[The Witness]: Yes, sir.

"[Defense Counsel]: What movie?

"[The Prosecutor]: Objection as to relevance, Your Honor.

"The Court: It's sustained. . . .

"[Defense Counsel]: Do you recall what movie?

"[The Prosecutor]: Same objection, Your Honor.

"The Court: Sustained. It's irrelevant.

"[Defense Counsel]: Do you recall whether they were all the same movie or different movies? Do you recall?

"[The Prosecutor]: Objection, Your Honor.

"The Court: Sustained."

Defense counsel then moved on to a line of questioning that concerned whether the DVDs were secured in order to preserve them as evidence for the criminal proceeding.

to assess the reliability and credibility of Gugliotti's testimony and was relevant to the element of value.

"It is axiomatic that [a criminal] defendant is entitled fairly and fully to confront and to cross-examine the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . .

"The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable. . . .

"The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . .

"The proffering party bears the burden of establishing the relevance of the offered testimony. *Unless such a proper foundation is established, the evidence . . . is irrelevant.* . . . This may be accomplished in one of three ways.

"First, the defendant can make an offer of proof. . . . Second, the record independently can be adequate to establish the relevance of the proffered testimony. . . . Finally, the defendant can establish a proper foundation for the testimony by stating a good faith belief that there is an adequate factual basis for his inquiry."

(Emphasis in original; internal quotation marks omitted.) *State* v. *Irizarry*, 95 Conn. App. 224, 243–44, 896 A.2d 828, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006). We conclude that the defendant failed to establish, by any of these methods, the relevance of the line of questioning that she sought to pursue.[7]

Significantly, when the court sustained the state's objections to the questions pertaining to the titles of the movies on the DVDs, defense counsel made no argument in support of the relevance of his proposed line of questioning. Moreover, defense counsel did not seek to make an offer of proof. "It is the appellant's burden to create an adequate appellate record to support his claim. . . . The defendant has failed to meet this burden. If he wanted to provide this court with an adequate appellate record, he should have presented an offer of proof. An offer of proof, properly presented, serves three purposes. First, it should inform the court of the legal theory under which the offered evidence is admissible. Second, it should inform the trial judge of the specific nature of the offered evidence so the court can judge its admissibility. Third, it thereby creates a record adequate for appellate review." (Internal quotation marks omitted.) *State* v. *Young*, 63 Conn. App. 794, 806, 778 A.2d 1015, cert. denied, 258 Conn. 903, 782 A.2d 140 (2001). The defendant failed to provide an adequate record for appellate review, and we decline to review her claim.

III

The defendant's next claim is that the court improperly failed to require compliance with a subpoena duces

---

[7] Although we focus on the defendant's failure to present an offer of proof, we also note that the record does not provide an independent basis on which the court should have concluded that the proposed line of questioning was relevant as to the reliability and credibility of Gugliotti or was relevant as to the value of the DVDs. Further, defense counsel did not assert that he had a good faith belief that his inquiry would elicit testimony showing that the movies recorded on the stolen DVDs were of such a nature that their value would be less than the amount scanned by the register.

tecum issued by defense counsel. The subpoena had been served on Gugliotti and required him to bring certain reports and documents to the court. When Gugliotti appeared without them, defense counsel requested a continuance in order to secure the paperwork that he had subpoenaed. The court denied that request. The defendant claims that the failure to comply with the subpoena duces tecum and the court's denial of her request for a continuance deprived her of a fair trial. We agree that the court should have enforced compliance by granting a limited continuance. Nevertheless, we conclude that the failure to do so was harmless and did not prejudice the defendant.

The following additional facts and procedural history are relevant to our resolution of the defendant's claim. On July 17, 2007, which was the second and final day of voir dire, the defendant served a subpoena duces tecum on Gugliotti, directing him to appear the next day to testify at trial and ordering him to bring the following documents: "[A]ny and all reports, police notes and documents pertaining to the above case. . . . This should include seized property reports and documents of all suspects . . . . *Also, this should include booking information and personal property inventory.*" (Emphasis added.) The state did not file a motion to quash the subpoena. Further, it did not claim that the subpoena was served less than the requisite eighteen hours prior to the time designated for Gugliotti to appear. See General Statutes § 52-143 (a).

Gugliotti appeared at court on July 18, 2007, as a witness for the state. After direct examination, defense counsel cross-examined him and inquired whether he had been served with the subpoena that directed him to bring reports, notes and any documentation pertaining to the case, including any seized property reports. Gugliotti responded that he had received that

subpoena but that he did not bring the requested documentation: "It was—I didn't personally bring it. It was sent over to court—I—I don't know when; months ago, I guess. It's already here."

Shortly thereafter, in the absence of the jury, defense counsel indicated that he "wanted to make a record . . . [as to] the cross-examination of [Gugliotti] about subpoenaed records." After some discussion, defense counsel requested a continuance to obtain that documentation. The court inquired as to the relevance of the seized property report and how the defendant was prejudiced by the failure to produce it. Counsel made an offer of proof. He indicated that the seized property report would show that the defendant had $250 on her person at the time she was arrested. According to counsel, that would show that she had money to pay for the DVDs and had not committed the crime as charged: "[I]t goes to corroborate the heart of the case, which is why she was up here in the first place."

The court denied the defendant's request for a continuance for the following reasons: (1) no foundation was laid as to whether Gugliotti was the officer who seized and inventoried the defendant's property; (2) the court had previously indicated that the trial most likely would be concluded in one day and all witnesses should have been present on that day of trial; (3) defense counsel should have known that seized property reports were in existence and subpoenaed the booking officer; and (4) there already had been delays in proceeding with the trial.[8] Subsequently, the state and the defense rested after that one day of evidence, and the court held a charging conference. Counsel made their closing arguments, and the court gave its instructions to the jury the following day, July 19, 2007.

---

[8] The defendant, not defense counsel, was late for the second day of voir dire, was late returning from lunch that same day and was late the following day. The record does not reveal any other delays.

"[T]he matter of a continuance is traditionally within the discretion of the trial judge which will not be disturbed absent a clear abuse. . . . It is not every denial of a request for a continuance that violates due process. . . . [T]he right of a defendant to a continuance is not absolute. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. . . . There are several factors that the trial court may consider in exercising its discretion. The factors include the timeliness of the request for continuance; the *likely* length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; the defendant's personal responsibility for the timing of the request; [and] the likelihood that the denial would substantially impair the defendant's ability to defend himself . . . . [A]n appellate court should limit its assessment of the reasonableness of the trial court's exercise of its discretion to a consideration of those factors, on the record, that were presented to the trial court, or of which that court was aware, at the time of its ruling on the motion for a continuance." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Fabricatore*, 89 Conn. App. 729, 734–35, 875 A.2d 48 (2005), aff'd, 281 Conn. 469, 915 A.2d 872 (2007).

We conclude that the court abused its discretion in denying the defendant's request for a continuance.

Defense counsel had subpoenaed Gugliotti, the detective called by the state as its sole witness, and directed him to bring, inter alia, "seized property reports" and "booking information and personal property inventory." The subpoena was served more than eighteen hours prior to the time designated for Gugliotti to appear in court. The state did not file a motion to quash the subpoena. When Gugliotti indicated at trial that he did not have the subpoenaed documents, defense counsel requested a continuance at that time and made an offer of proof as to relevance and prejudice. The requested continuance was made after Gugliotti's testimony but before the charging conference, closing arguments and the court's instructions to the jury. With or without the continuance, the jury would have had to return for a second day because the trial could not be completed in one day. In light of those factors, the court abused its discretion in denying the motion for a continuance to allow defense counsel the opportunity to secure the report he had subpoenaed.

Nevertheless, the denial of the motion for a continuance did not prejudice the defendant. The defendant claims that the fact that she had $250 in her possession at the time of her arrest indicates that she did not intend to steal the DVDs. This argument is flawed because it does not necessarily follow that an individual with money in his or her possession would pay for store items rather than steal them. Furthermore, in this case, the items involved happened to be 101 DVDs valued at $1822.72. Given the sheer number of the DVDs and the cost of those DVDs, being more than seven times the amount of money that the defendant had in her possession, we conclude that the failure to grant the request for a continuance in order to produce the report was harmless.

IV

The defendant's final claim is that the court improperly refused to instruct the jury in accordance with her

proposed charge on value. Specifically, the defendant argues that the court should have charged that, under General Statutes § 53a-121 (a) (3),[9] the jury had to value the stolen property at less than $50 if it did not credit the state's evidence as to the market value of that property.

The court held the charging conference on the record. It reviewed the defendant's request to charge and described the instructions that it planned to give the jury on the standards to be used in determining the value of the property. During the conference, defense counsel requested that the court include an instruction that the jury must set the value of the property at $50 if it could not determine the value beyond a reasonable doubt using the standards given by the court.[10] The court indicated that it would not give such a charge because there had been testimony as to the exact value of the DVDs at issue; if the jury did not credit that testimony, it would have to find the defendant not guilty of the charge of larceny in the third degree.

"It is a well established principle that a defendant is entitled to have the jury correctly and adequately instructed on the pertinent principles of substantive law. . . . The charge must be correct in the law, adapted to the issues and sufficient to guide the jury. . . . The primary purpose of the charge to the jury is to assist [it] in applying the law correctly to the facts which [it] find[s] to be established." (Internal quotation marks omitted.) *State* v. *Patterson*, 276 Conn. 452, 466, 886 A.2d 777 (2005).

In the present case, the only evidence as to value was Gugliotti's uncontradicted testimony that the value

---

[9] General Statutes § 53a-121 (a) (3) provides: "When the value of property or services cannot be satisfactorily ascertained pursuant to the standards set forth in this section, its value shall be deemed to be an amount less than fifty dollars."

[10] This request was included in the defendant's written request to charge.

of the DVDs, as scanned by the register, was $1822.72. Because there was no other evidence as to value, the court correctly instructed the jury on the principles of law invoked by the evidence as presented. The court charged: "In this case, evidence has been presented that the items, to wit, claimed to have been stolen, had a retail price of $1822.72. If that testimony is correct, this price, not a lower or wholesale price, would be their market value. . . . If you can determine the price that the property sold for at the time of the crime, then that is the controlling value." Given the evidence presented to the jury, the court had no basis on which to give the defendant's requested charge. The jury either believed Gugliotti's testimony or it did not.

Furthermore, because there were no instructions as to lesser included offenses, the state's failure to prove that the value of the property stolen was greater than $1000 would have resulted in the defendant's acquittal of the charged offense. The court instructed the jury: "If you find the defendant is guilty of larceny, you must go on to consider the value of the property involved. For you to find the defendant guilty of this charge, the state must prove beyond a reasonable doubt that the value of the property or services taken exceeded $1000. If you find the state has proven beyond a reasonable doubt each of the elements of the crime of larceny in the third degree, then you shall find the defendant guilty. On the other hand, if you find that the state has failed to prove beyond a reasonable doubt any one of the elements, you shall find the defendant not guilty." Accordingly, the defendant's final claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.