******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* LORENZO ADAMS
(AC 36701)

Beach, Sheldon and Harper, Js.

*Argued December 7, 2015—officially released March 22, 2016*

(Appeal from Superior Court, judicial district of Danbury, geographical area number three, Roraback, J.)

*Deren Manasevit*, assigned counsel, for the appellant (defendant).

*Nancy L. Walker*, deputy assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Colleen P. Zingaro*, assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Lorenzo Adams, appeals from the judgment of conviction, rendered following a trial to the court, of attempt to commit larceny in the sixth degree in violation of General Statutes §§ 53a-49[1] and 53a-125b[2] and breach of peace in the second degree in violation of General Statutes § 53a-181.[3] On appeal, the defendant claims that the state adduced insufficient evidence to sustain his conviction of both crimes beyond a reasonable doubt.[4] We affirm the judgment of the trial court with respect to the breach of peace charge, but we reverse the judgment with respect to the attempted larceny charge.

The following facts are relevant to the defendant's claims on appeal. On the evening of September 23, 2006, Sergeant Vincent LaJoie and Officer Jose Pastrana of the Danbury Police Department responded to a report of a larceny in progress at the Marshalls department store in Danbury. They were informed that the suspect was trying to flee and that the suspect physically engaged Marshalls' security personnel. LaJoie arrived first and spoke with Joseph Fernandes and Christine Nates—two loss prevention officers for Marshalls—who described the suspect. Pastrana arrived shortly thereafter while LaJoie still was conferring with Fernandes and Nates. LaJoie then transmitted the suspect's description to dispatch and proceeded to search for the suspect in the shopping plaza parking lot. Pastrana proceeded to the loss prevention office with Nates and Fernandes, who showed him a DVD containing surveillance footage of the suspect's activity in the store.

LaJoie found a person matching the suspect's description outside of a nearby Staples store. He noticed that this person was perspiring and breathing heavily. LaJoie accosted the individual and informed dispatch that he believed he had the suspect. Pastrana had viewed about half of the surveillance footage when he was informed that LaJoie had apprehended a suspect. He transported Fernandes and Nates to LaJoie's location, where they identified the defendant as the suspect. The defendant subsequently was taken into custody and transported to the police station.

The state originally charged the defendant with breach of peace in the second degree, robbery in the third degree, and attempt to commit larceny in the fourth degree. The defendant filed motions for a bill of particulars and for a statement of essential facts in August, 2012 and December, 2013. By a substitute long form information dated January 9, 2014, the state charged the defendant with robbery in the third degree, attempt to commit larceny in the sixth degree, and breach of peace in the second degree. With respect to the attempted larceny charge, the state alleged that the defendant committed a crime when he "attempted to

take a jacket from the Marshall[s] store . . . ."

The case was tried before the court on February 4, 2014. The state offered the surveillance footage of the defendant in the store into evidence. The court was shown the recorded footage[5] during Pastrana's direct examination, which he narrated from the witness stand. Specifically, Pastrana testified as follows. The footage began with the defendant in the men's department of Marshalls without any shopping bags or other items in his hands. The defendant looked through a rack of suits, removed one from the rack, and carried it off to a corner of the store. Later, the defendant took a pair of shoes to the same corner of the store. Even later, the cameras show the defendant placing items in a bag in the same corner of the store. Pastrana specifically describes the bag as "[a] plastic bag filled with some items." The defendant then gathered a large, full bag and walked to the store exit without paying for anything. As he reached the exit, he was approached by Fernandes and Nates, who attempted to stop him from leaving the store. The defendant struggled physically with them for a few moments before exiting the store. The loss prevention officers stated to Pastrana that they were shoved by the defendant as he attempted to escape. The defendant dropped the bag he was carrying before he left the store. Neither Fernandes nor Nates testified at trial.

After the trial concluded, the court articulated its decision from the bench. The court found the testimony of both police officers to be credible, and found the defendant guilty of both breach of peace in the second degree and attempt to commit larceny in the sixth degree.[6] With respect to breach of peace, the court made the following remarks: "I am going to find [the defendant] guilty of breach of peace in the second degree because the court's review of the evidence at the time he was exiting the store, the videotape, demonstrated beyond a reasonable doubt that there was a scuffle which can clearly be characterized as tumultuous behavior in a public place." With respect to attempted larceny, the court commented that "the evidence, [the defendant] being in the Marshalls store and going to the point of exit with a bag filled with things that were not in his possession when he entered the store, or which he was not carrying as he entered the store, leads the court to find the defendant guilty of attempted larceny in the sixth degree because the court finds that the state has proven beyond a reasonable doubt that he attempted to take possession of goods or merchandise offered or exposed for sale by Marshalls with the intent of converting the same to his use without paying the purchase price for those goods." The defendant was sentenced to consecutive terms of three months and six months on the attempted larceny and breach of peace charges, respectively. This appeal followed.

In this appeal, the defendant claims that the evidence admitted at trial was insufficient to support his conviction of attempt to commit larceny in the sixth degree and breach of peace in the second degree. The state objects, arguing that it presented ample evidence from which the court could find the defendant guilty of both crimes. For reasons we now discuss, we affirm the judgment with respect to the breach of peace charge and reverse the judgment with respect to the attempted larceny charge.

We begin with the standard of review. "The standard of review [applicable to] a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Crenshaw*, 313 Conn. 69, 93, 95 A.3d 1113 (2014). "While the [trier of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [trier of fact] to conclude that a basic fact or an inferred fact is true, the [trier of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Stephen J. R.*, 309 Conn. 586, 593–94, 72 A.3d 379 (2013).

I

We address first whether there was sufficient evidence to support the defendant's conviction of attempt to commit larceny in the sixth degree. The defendant argues that the state produced no evidence to prove that the items that were in the bag he carried to the store exit belonged to Marshalls. He also argues that the state failed to submit evidence to prove that he committed attempted larceny in the manner described in the long form information, namely, by attempting to steal a jacket belonging to Marshalls. The state argues that the attempted larceny conviction was supported by ample evidence. The state contends that the footage showing the defendant selecting items from various racks, gathering them in one corner of the store, and then returning to that area for several minutes before leaving with a full bag not previously depicted in the footage, permitted the court to conclude that the defendant had attempted to take merchandise belonging to Marshalls. The state notes that there is no dispute that

the defendant is the person depicted in the surveillance footage. Further, the state argues that the defendant's unexplained flight from the store when approached by Fernandes and Nates supports an inference that the defendant was conscious of his guilt.

The following legal principles guide our analysis of this issue. "A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is five hundred dollars or less." General Statutes § 53a-125b (a). "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." General Statutes § 53a-119. Subsection (9) of § 53a-119 provides that shoplifting is a means to commit larceny. Section 53a-119 (9) provides: "A person is guilty of shoplifting who intentionally takes possession of any goods, wares or merchandise offered or exposed for sale by any store or other mercantile establishment with the intention of converting the same to his own use, without paying the purchase price thereof. A person intentionally concealing unpurchased goods or merchandise of any store or other mercantile establishment, either on the premises or outside the premises of such store, shall be prima facie presumed to have so concealed such article with the intention of converting the same to his own use without paying the purchase price thereof." See also *State* v. *Saez*, 115 Conn. App. 295, 302, 972 A.2d 277 ("for a conviction of larceny by shoplifting, the state must prove that the property taken by the defendant was goods, wares or merchandise exposed for sale within the store"), cert. denied, 293 Conn. 909, 978 A.2d 1113 (2009).

With these principles in mind, we conclude that the court improperly found that the state adduced sufficient evidence to support a conviction of attempt to commit larceny in the sixth degree. In particular, we conclude that the state failed to prove beyond a reasonable doubt that the defendant attempted to intentionally deprive Marshalls of its property that it exposed for sale within the store. See id. To begin with, we reject the court's conclusion that the surveillance footage showed the defendant "going to the point of exit with a bag filled with things that were not in his possession when he entered the store, or which he was not carrying as he entered the store . . . ." On the contrary, the footage does not show the defendant entering the store at all; it begins with him in the men's section browsing suits. There is no evidence that the defendant entered Marshalls with or without a bag, empty or full. Additionally, there is no evidence in the record to support the court's conclusion that the "bag filled with things" that the defendant carried to the store's exit were things that belonged to Marshalls. Pastrana testified that Fernandes and Nates had told him that the defendant was

"taking items or picking out items, and then taking them to a certain corner of the store, and then piling them up." He also testified that the surveillance footage showed the defendant "put stuff in the bag," and later that he could see "[a] plastic bag filled with some items" in the defendant's hands. Although this testimony is consistent with the surveillance footage, there is no testimony or footage to demonstrate, beyond a reasonable doubt, that the items belonging to Marshalls that the defendant gathered in the corner of the store were the same items that he placed into a plastic bag and attempted to walk out with. No one testified, for example, that after Fernandes and Nates recovered the bag from the defendant, they verified that the items they discovered within the bag belonged to Marshalls. Furthermore, the surveillance camera's view of the area where the defendant gathered items is obstructed by racks of clothing and a large sign suspended from the ceiling. Thus, because the defendant's activity in the isolated corner of the store was mostly invisible to the cameras, the state's claim that the defendant was placing goods belonging to Marshalls in the bag is, in our view, pure speculation.

The state acknowledges that it was necessary to prove that the items in the bag belonged to Marshalls, but argues that it did. Specifically, the state contends that the court reasonably could have determined that the items belonged to Marshalls because Pastrana testified that Fernandes and Nates told him the value of the items in the bag—approximately $979.[7] The state relies on *State* v. *Jennings*, 125 Conn. App. 801, 9 A.3d 446 (2011), in support of this position. The defendant in *Jennings* was charged with larceny in the third degree and conspiracy to commit larceny in the third degree. Id., 803. He was observed with two other individuals in a Wal-Mart store standing near a shopping cart that contained a clear plastic tote. Id., 804. All three individuals were observed collecting and concealing DVDs from the store within that tote. Id. They removed the DVDs from the tote and placed them inside a suitcase. Id. The defendant's coconspirators placed the suitcase in the shopping cart and left the cart near the exit. Id. The defendant then pushed the cart toward the exit and was apprehended. Id. After the defendant was arrested, a store employee scanned the DVDs and printed a receipt that indicated that the value of the DVDs was $1822.72. Id., 805. After a jury trial, the defendant was convicted of larceny and conspiracy to commit larceny. Id.

On appeal, the defendant claimed that the state had failed to prove that the value of the DVDs exceeded $1000, an essential element of larceny in the third degree.[8] Id., 806. Specifically, the defendant argued that the only evidence of value offered at trial was given by the responding police officer, who testified, after refreshing his recollection with his police report, that

the value of the DVDs exceeded $1000. Id., 807–808. Neither the store's receipt nor the DVDs were exhibits at trial. Id., 807. This court disagreed, reasoning that the officer's testimony, "absent objection by the defendant, was sufficient proof that the total value of the 101 DVDs exceeded $1000." Id.

We disagree that *Jennings* is instructive to our analysis. The claim in *Jennings* was that the state failed to present sufficient evidence to prove, beyond a reasonable doubt, the essential element of value, *not* the essential element of *ownership of the item*, which is at issue in the present case. See id., 806; see also *State* v. *Lokting*, 128 Conn. App. 234, 239–40, 16 A.3d 793 ("larceny in the sixth degree consists of two essential elements: [1] the *intentional deprivation of an owner's property* through the wrongful taking, obtaining or withholding of such property; see General Statutes § 53a-119; and [2] the *value* of the property is [$500] or less" [emphasis added]), cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011); *State* v. *Saez*, supra, 115 Conn. App. 302 ("for a conviction of larceny by shoplifting, the state must prove that the property taken by the defendant was goods, wares or merchandise exposed for sale within the store"). In *Jennings*, the police and store loss prevention officers were able to see the defendant and his coconspirators take specific items belonging to the store, place them in a clear tote, transfer them into a suitcase, and then begin to take them from the store. Id., 804–805. Thus, there was never any issue concerning the store's ownership of the DVDs in that case.

Here, however, there is no evidence that the items that the defendant tried to exit Marshalls with belonged to the store. The surveillance footage does not capture the defendant placing specific, identifiable store merchandise into the bag before making off with it, and there was no evidence before the trial court that the contents of the bag that the defendant abandoned belonged to Marshalls. It is entirely conceivable that the defendant entered Marshalls with the bag, and that the bag contained items from somewhere else. To the extent that the state argues that evidence of value may, by itself, establish that the items belonged to Marshalls, we reject that position as well. For all we know, Fernandes and Nates guessed the value that they reported to Pastrana. We have no evidence to substantiate how they concluded that the items valued $979. In the absence of some evidence, we conclude that the court could not infer ownership from value without speculating. Therefore, the state has failed to prove beyond a reasonable doubt an essential element of § 53a-125b and, consequently, the defendant's conviction of attempt to commit larceny in the sixth degree cannot stand.

II

The defendant next claims that the evidence was insufficient to sustain his conviction of breach of peace

in the second degree. We disagree.

"A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place . . . ." General Statutes § 53a-181 (a) (1). "Pursuant to § 53a-181, the state must prove that (1) the defendant engaged in fighting or in violent, tumultuous or threatening behavior, (2) this conduct occurred in a public place and (3) the defendant acted with the intent to cause inconvenience, annoyance or alarm, or that he recklessly created a risk thereof." *State* v. *Ragin*, 106 Conn. App. 445, 451, 942 A.2d 489, cert. denied, 287 Conn. 905, 950 A.2d 1282 (2008).

The defendant does not dispute that the conduct occurred in a public place, but challenges the sufficiency of the evidence with respect to the act and intent elements of the crime. First, the defendant challenges the sufficiency of the evidence supporting the court's finding that the surveillance footage "demonstrated beyond a reasonable doubt that there was a scuffle which can clearly be characterized as tumultuous behavior in a public place." The defendant contends that the footage is merely a series of digital snapshots that do not show continuous action, and, therefore, that it is impossible to determine that his actions constituted fighting or violent, tumultuous or threatening behavior.

"Our Supreme Court, in order to ascertain the meaning of § 53a-181 (a) (1), looked to the construction given by this court in *State* v. *Lo Sacco*, 12 Conn. App. 481, 490, 531 A.2d 184, cert. denied, 205 Conn. 814, 533 A.2d 568 (1987), to identical language contained in General Statutes § 53a-181a (a) (1), the public disturbance statute. See *State* v. *Szymkiewicz*, [237 Conn. 613, 618, 678 A.2d 473 (1996)]. In *State* v. *Lo Sacco,* supra, this court stated that ' "[t]hreatening" is defined as a "promise [of] punishment" or, "to give signs of the approach of (something evil or unpleasant)." [Webster, Third New International Dictionary.] When, [however] two or more words are grouped together, it is possible to ascertain the meaning of a particular word by reference to its relationship with other associated words and phrases under the doctrine of noscitur a sociis. . . . Placed within the context of the other words in the statute, the word "threatening" takes on a more ominous tone. The statute proscribes "engaging in fighting or in violent, tumultuous, or threatening behavior." In *State* v. *Duhan*, [38 Conn. Supp. 665, 668, 460 A.2d 496 (1982), rev'd on other grounds, 194 Conn. 347, 481 A.2d 48 (1984)], the Appellate Session of the Superior Court defined "tumultuous" as "riotous" and "turbulent." Fighting, by its plain meaning, involves physical force. . . . [T]he language of subdivision (1) of General Statutes § 53a-181a (a) . . . evinces a legislative intent to

proscribe conduct which actually involves physical violence or portends imminent physical violence.' " *In re Jeremy M.*, 100 Conn. App. 436, 450–51, 918 A.2d 944, cert. denied, 282 Conn. 927, 926 A.2d 666 (2007).

The court's conclusion that the defendant engaged in fighting or violent, tumultuous, or threatening behavior was supported by sufficient evidence. Although the surveillance footage does not depict uninterrupted action, it clearly depicts a continuous altercation in increments of nearly one image per second. The surveillance footage shows Fernandes and Nates confront the defendant and attempt to block his exit from the store. Their arms and bodies move about as the defendant tries to force his way out the door. In addition, Pastrana testified that Fernandes and Nates told him that the defendant shoved them to get out. This testimony was admitted into evidence without objection at trial.

The defendant also claims that the evidence was insufficient to establish that he intended to cause inconvenience, annoyance, or alarm. "[T]he predominant intent [in a breach of peace charge] is to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm." *State* v. *Wolff*, 237 Conn. 633, 670, 678 A.2d 1369 (1996). Construing the evidence in the light most favorable to upholding the conviction, as we must, we conclude that the surveillance footage shows Fernandes and Nates intercept the defendant as he tried to leave. The defendant clearly attempts to get around them on both sides before he successfully escapes. Fernandes and Nates were attempting to prevent what they perceived as a theft in the course of their employment—a lawful activity which was disturbed by the defendant's conduct. The cumulative force of this evidence is that the defendant used physical force, namely, a shove, with the intent to impede a lawful activity. Accordingly, we conclude that sufficient evidence supported the court's judgment with respect to the breach of peace conviction.

The judgment is reversed only with respect to the defendant's conviction of attempt to commit larceny in the sixth degree and the case is remanded with direction to render a judgment of acquittal on that charge; the judgment is affirmed with respect to his conviction of breach of peace in the second degree.

In this opinion, SHELDON, J., concurred.

[1] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-125b (a) provides: "A person is guilty of larceny

in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is five hundred dollars or less."

[3] General Statutes § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place . . . ."

[4] The defendant also claimed that his constitutional right to present a defense was violated, but abandoned this claim at oral argument before this court.

[5] The surveillance footage was produced by a closed circuit television system which records a series of still pictures approximately every second.

[6] The court found the defendant not guilty of robbery in the third degree.

[7] Pastrana's testimony on the subject of the value of the goods recovered from the defendant is as follows:

"[The Prosecutor]: And do you know what merchandise the defendant was trying to take from the store at that time?

"[Officer Pastrana]: To my best recollection, I cannot tell you the actual items. I know the total amount that they gave me, that they ran up. The total was approximately $979 and change."

[8] General Statutes § 53a-124, defining larceny in the third degree, was amended in 2009 to increase the minimum value of the property involved to $2000. Public Acts 2009, No. 09-138, § 3.