# STATE OF CONNECTICUT *v.* JAVIER L. SAEZ
## (AC 28209)

Flynn, C. J., and DiPentima and West, Js.

Argued February 19—officially released June 23, 2009

*Suzanne Z. Curtis*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Kelley P. Swift*, former assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Javier L. Saez, appeals from the judgment of conviction, rendered after a jury trial, of larceny in the sixth degree in violation of General Statutes §§ 53a-119 (9) and 53a-125b[1] and, subsequently, by guilty plea, of being a persistent larceny offender in violation of General Statutes § 53a-40 (e).[2] On appeal, the defendant claims that the evidence adduced at trial was insufficient to support his conviction of larceny in the sixth degree.[3] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 5, 2005, the defendant purchased a large

[1] General Statutes § 53a-125b provides in relevant part: "A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is two hundred fifty dollars or less."

General Statutes § 53a-119 (9) provides in relevant part: "A person is guilty of shoplifting who intentionally takes possession of any goods, wares or merchandise offered or exposed for sale by any store or other mercantile establishment with the intention of converting the same to his own use, without paying the purchase price thereof. . . ."

[2] General Statutes § 53a-40 (e) provides: "A persistent larceny offender is a person who (1) stands convicted of larceny in the third degree in violation of the provisions of section 53a-124 in effect prior to October 1, 1982, or larceny in the fourth, fifth or sixth degree, and (2) has been, at separate times prior to the commission of the present larceny, twice convicted of the crime of larceny."

[3] The defendant claims and the state concedes that if this court concludes that the evidence was insufficient to support his conviction of larceny in the sixth degree and reverses the judgment of the trial court, we also must reverse his conviction, which resulted from his guilty plea, for being a persistent larceny offender. As we are affirming the judgment, we need not reach this issue.

piece of foam poster board from the Staples store located on Kings Highway in Fairfield. Judy Suba, a Staples sales associate operating a cash register at the time, rang up the defendant's purchase. Soon after completing the sales transaction with the defendant, Suba went to the service desk located at the front of the store near the customer entrance. This entrance to the store consists of a rectangular shaped glass foyer with four automatic doors. Two doors are located on opposite sides of the foyer, perpendicular to the service desk, and serve as entry and exit between the foyer and the store itself. The two remaining doors are parallel to the service desk and serve as entry and exit between the foyer and the sidewalk in front of the store. Put another way, one enters the store from the sidewalk through an automatic door into the foyer, then gains entry to the store proper through another automatic door. These doors are opened by the same pressure plate located in front of the store on the sidewalk, open simultaneously and remain open for seven to ten seconds. Exit from the store is accomplished similarly by the other pair of automatic doors. Adjacent to the doors into and out of the store (from and into the foyer) are theft detecting sensors that rise from the floor and flank patrons as they enter and exit the store; no sensors are located in the foyer. The sensors are housed in two parallel plastic carapaces that extend from the floor to a height of approximately five feet, but the sensors themselves do not cover the area from the floor to approximately twelve inches above it.

Soon after arriving at the service desk, Suba saw the defendant near the sensor located at the door designated for entering the store from the glass foyer. Suba saw the defendant crouching down and "scooting" a box along the floor, between the theft alarm censors; he no longer had the poster board that he had purchased. The defendant then went out the door with the

box, into the glass foyer, then exited the store. Suba alerted a fellow employee and both exited the store in pursuit of the defendant. In front of the store was another employee assisting a customer in loading purchased items into her vehicle from a dolly. The employee who accompanied Suba from the store yelled "drop the box" to the defendant. The defendant then placed the box onto the dolly with the items being loaded into the customer's vehicle. The defendant quickly left the area and soon was out of sight of the group that had gathered. Suba retrieved the box, discovered that it contained a Uniden telephone, in its original packaging, that was offered for sale in Staples and brought it back into the store.

In the meantime, the store manager, Christopher Raucci, exited the store upon hearing the commotion going on in the parking lot and started to investigate. The defendant, at this point in time, was not in sight. Soon, however, the customer who was loading purchased items into her automobile, saw the defendant in the parking lot and pointed him out to Raucci. Raucci saw the defendant get into a gray sport-utility vehicle, crouch down and drive away. Raucci recognized the defendant as a customer with whom he had had a brief conversation in the store just moments before. Raucci took down the license plate number and, after conferring with his supervisor, called the police. Charles Ricco, a Fairfield police officer, came to the store to investigate the shoplifting incident and took a joint statement from Suba and Raucci. After acquiring the address of the registered owner of the gray sport-utility vehicle, Ricco went to the residence. There, in the driveway, he found a gray Kia with the same license plate number as the vehicle seen leaving the parking lot; the hood was still warm from recent use. Ricco spoke with the registered owner, the defendant's girlfriend, as well

as the defendant's brother, Luis Saez, who supplied Ricco with the defendant's name.

Some time later, Ricco, upon receiving a dispatch from police headquarters, returned to the police station and met the defendant and his brother in the lobby. Ricco testified that upon meeting him, the defendant stated: "I want to own up to what I did. I took a box, a phone at Staples, and I put it down after the woman yelled at me and told me to stop. I didn't think I did anything wrong and I left, I was nervous, and I want to own up to what I did and be a man about it and take responsibility." After being read his *Miranda* rights,[4] the defendant signed a written statement that subsequently was read into the record during his trial.[5] The defendant

[4] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] The following was read into the record in the presence of the jury: "This is a document from the Fairfield Police Department. It's headed, 'Voluntary Statement.' It was dated May 5, 2005. There are two pages. Name of the person giving the statement is Javier Saez. It's got his date of his birth, phone number, address, name of the person taking the statement, Officer Charles Ricco, and the questions begin. . . .

" 'The above named person [does] make the following voluntary statement to Officer Charles Ricco of the Fairfield Police Department. Knowing that I have been advised of—that any statement made herein, which I do not believe to be true, and which statement is intended to mislead a public servant in the performance of his official function may be punishable under Connecticut General [Statutes § 53a-157].'

"And then there's the questions.

'Question: Why are you giving this statement?

'Answer: Because I turn myself in and want to take care of [these] problems. . . .

'Question: Were you given your notice of rights?

'Answer: Yes. . . .

'Question: Were you promised anything in return for this statement?

'Answer: No.

'Question: Why did you turn yourself in?

'Answer: I want to take responsibility for my own actions.

'Question: You are a suspect of a shoplifting at Staples in Fairfield, Connecticut, this afternoon at about 3:23 p.m., did you take merchandise out of the store without paying for it?

'Answer: Yes. I was in Staple[s] buying something. On my way out, I saw a box near the front door, I saw that it was a phone, I picked it up and

was arrested and charged by two part information with having committed larceny in the sixth degree by shoplifting and with being a persistent larceny offender. After the defendant was found guilty by the jury of larceny in the sixth degree, and after he pleaded guilty to being a persistent larceny offender, the court sentenced him to three years of incarceration. This appeal followed. Further facts will be set forth as necessary.

The defendant claims on appeal that the evidence adduced at trial was insufficient to support his conviction of larceny in the sixth degree by shoplifting. Specifically, the defendant contends that the evidence was insufficient to prove that he possessed the requisite intent to convert the property to his use without paying for it or that his conduct constituted concealment of the item that he allegedly had shoplifted. Preliminarily, we set forth the proper standard of review applicable here.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force

---

walked outside the store with it. The lady from the store ran out and yelled, hey, hey. So I put the box down, got in my girlfriend's car, and left. . . .

'I have read the statement consisting of two pages and hereby declare [that] the facts contained therein are true and correct.'

"It's signed by Javier Saez, and it's sworn and signed on the same day, May 5th, 2005. . . .

"Second page, additional questions, it's also signed by Mr. Javier Saez. This is page two.

'Question: Why did you leave?

'Answer: I was nervous, and I thought I really didn't do anything wrong. I heard from my family that the police were looking for me, so I turned myself in. . . .

'Question: Do you have anything else to add to this statement?

'Answer: I'm sorry I took off, but I was nervous.' "

of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask,

instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Pascal*, 109 Conn. App. 55, 60–61, 950 A.2d 566, cert. denied, 289 Conn. 917, 957 A.2d 880 (2008).

"A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner . . . ." General Statutes § 53a-119. "Connecticut courts have interpreted the essential elements of larceny as (1) the wrongful taking or carrying away of the personal property of another; (2) the existence of a felonious intent in the taker to deprive the owner of [the property] permanently; and (3) the lack of consent of the owner. . . . Because larceny is a specific intent crime, the state must show that the defendant acted with the subjective desire or knowledge that his actions constituted stealing. . . . Larceny involves both taking and retaining. The criminal intent involved in larceny relates to both aspects. The taking must be wrongful, that is, without color of right or excuse for the act . . . and without the knowing consent of the owner. . . . The requisite intent for retention is permanency." (Citation omitted; internal quotation marks omitted.) *State* v. *Torres*, 111 Conn. App. 575, 584–85, 960 A.2d 573 (2008), cert. denied, 290 Conn. 907, 964 A.2d 543 (2009). Also, for a conviction of larceny by shoplifting, the state must prove that the property taken by the defendant was goods, wares or merchandise exposed for sale within the store. General Statutes § 53a-119 (9); see footnote 1. The defendant claims that the state failed to prove beyond a reasonable doubt that he had the requisite intent under § 53a-119 (9).

"It is well established that the question of intent is purely a question of fact. . . . Intent may be, and usually is, inferred from the defendant's verbal or physical

conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Intent may be gleaned from circumstantial evidence such as . . . the events leading up to and immediately following the incident. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Citation omitted; internal quotation marks omitted.) *State* v. *Porter*, 76 Conn. App. 477, 487–88, 819 A.2d 909, cert. denied, 264 Conn. 910, 826 A.2d 181 (2003). Also, this court has stated that "[j]urors are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion." (Internal quotation marks omitted.) *State* v. *Williams*, 48 Conn. App. 361, 372, 709 A.2d 43, cert. denied, 245 Conn. 907, 718 A.2d 16 (1998).

The following additional facts are pertinent to the defendant's claim. The defendant testified both as to the events that took place at Staples and those that took place later that day at the police station. He testified that he came across the box containing the telephone in the glass foyer as he exited the store immediately after paying for the poster board. He further testified that he never left the store with the box and that Suba approached him soon after he picked up the box, demanded its return and that he handed it directly to her. He also testified that at no time during the incident at Staples was he aware that the box contained a telephone that was offered for sale by the store. He testified that not only had he never left the store with the box, he never intended to leave without paying for it. The defendant also testified that he went directly to his

girlfriend's vehicle, without any Staples' employees following him, and left the premises.

Although the defendant couches his arguments in terms of insufficiency of the evidence, he, however, confuses the issues of sufficiency and credibility. The defendant's arguments that the evidence of his intent to shoplift the Uniden telephone from Staples was insufficient to support his conviction involve the vast discrepancies between his testimony and the testimony of Suba and Raucci concerning the incident at Staples. The defendant, relying on his version of events, contends that there was no evidence as to how the telephone got into the store's foyer or of him placing it there. There also was no evidence, he asserts, of his acting suspiciously or being near the area in the store where the telephones were offered for sale. As a result, the defendant purports, the jury could not reasonably find that he had the requisite intent to deprive the owner of the telephone permanently because the telephone had the status of abandoned property. The defendant seems to argue that all the testimony was identical and supported a finding that the foyer was the location of the box when the defendant came upon it. He apparently contends that even Suba testified that she first saw the defendant with the box in the glass foyer and not in the store proper. A thorough review of the record, however, including Suba's testimony and the photographs of the store's layout, entered as full exhibits by both the state and the defendant, show clearly that this is inaccurate. Suba testified, as detailed previously, that she first saw the defendant with the box in the store itself and not in the foyer. Therefore, the defendant's argument that there was no evidence to support the jury's finding of the requisite intent has no basis in the record, and, therefore, this claim concerns, in actuality, a credibility determination. In other words, his assertions as to the telephone's having the status of abandoned property

are based solely on his version of events, and it is within the province of the jury to believe all, part or none of the defendant's testimony. See *State* v. *Meehan*, 260 Conn. 372, 381, 796 A.2d 1191 (2002). As this court has stated many times, "[q]uestions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Osoria*, 86 Conn. App. 507, 514–15, 861 A.2d 1207 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1082 (2005).

On the basis of the record before us, we conclude that the jury was free to credit the testimony of Suba and Raucci and that their testimony amply supports the finding by the jury beyond a reasonable doubt that the defendant intended to convert the Uniden telephone to his use permanently without consent and without paying for it. Moreover, there was ample other evidence adduced at trial to support the jury's finding of guilt beyond a reasonable doubt of larceny in the sixth degree, including the defendant's written statement made to police as well as his statements made to Ricco in the police department lobby on the date of the incident. Furthermore, the evidence of his conduct in scooting the box—a Uniden telephone offered for sale in its original packaging—below the range of the theft detector located at the door designated for entry into the store and then exiting with it is sufficient to support reasonably the inference that the defendant intended to convert the property to his use without paying for it. As we have stated "[i]t is . . . the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses." *State* v. *Reddick*, 33 Conn. App. 311, 333, 635 A.2d 848 (1993),

cert. denied, 228 Conn. 924, 638 A.2d 38 (1994). There-fore, because we cannot decide issues of credibility, the defendant's claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.