******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* LORENZO ADAMS
(AC 36704)

Lavine, Beach and Sheldon, Js.

*Argued September 18, 2015—officially released March 22, 2016*

(Appeal from Superior Court, judicial district of
Danbury, Roraback, J.)

*Deren Manasevit*, assigned counsel, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Colleen P. Zingaro*, assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Lorenzo Adams, appeals from the judgment of conviction for conspiracy to commit larceny in the sixth degree, in violation of General Statutes §§ 53a-48[1] and 53a-125b,[2] which was rendered against him by the trial court on February 10, 2014, on the basis of his alleged conduct at a Microsoft store in Danbury with a named coconspirator, one Stacey Rossman, on December 13, 2012. The trial court found that on that date, the defendant conspired with another person to steal Beats by Dre (Beats) headphones from the Microsoft store in Danbury and that one of them committed the overt act of stealing at least one pair of such headphones from the store in furtherance of that conspiracy. Following the trial, at which the court also acquitted the defendant, inter alia, of larceny in the sixth degree in connection with that same alleged course of conduct, the court sentenced the defendant on the conspiracy charge to a term of ninety days in jail. This appeal followed.

The defendant claims on appeal that the evidence before the trial court was insufficient to support his conviction for conspiracy to commit larceny in the sixth degree. He claims, more particularly, that the evidence admitted against him was insufficient to prove beyond a reasonable doubt that (1) he conspired with anyone to commit the offense of larceny in the sixth degree on December 13, 2012; (2) he had the intent to commit the crime of larceny in the sixth degree on that date; or (3) while acting with that intent, he or Rossman stole Beats headphones on that date in furtherance of their alleged conspiracy. We agree with the defendant that the evidence was insufficient to support his conviction for conspiracy to commit larceny in the sixth degree, and thus remand this case to the trial court with direction to vacate his conspiracy conviction and enter a judgment of acquittal on that charge.

The following facts are relevant to this appeal. This case was tried on a three count long form information charging the defendant as follows: (1) with larceny in the sixth degree ("on or about December 13, 2012 . . . [the defendant] did take the property of Microsoft to wit: headphones in violation of [§] 53a-125b"); (2) with conspiracy to commit larceny in the sixth degree ("on or about December 13, 2012 . . . [the defendant] with the intent to commit a larceny in the sixth degree, did agree with Stacey Rossman to commit larceny in the sixth degree by taking the property of Microsoft to wit: headphones in violation of [§§] 53a-48 and 53a-125b"); and (3) with attempted larceny in the sixth degree ("on or about December 14, 2012 . . . [the defendant] attempted to take headphones from the Microsoft store in violation of [§§] 53a-49 and 53a-125b"). After the defendant waived his right to trial by jury and elected to be tried by the court, trial commenced on January

16, 2014.

The state presented two witnesses in its case-in-chief at trial. Only one of them offered any testimony concerning the events of December 13, 2012, upon which the defendant's challenged conspiracy conviction was based. The sufficiency of the state's evidence to support that conviction thus depends directly upon the nature and substance of that witness's testimony and of the inferences that can be reasonably drawn from it.

Nancy John, the manager of the Microsoft store in the Danbury Fair Mall, testified that the store was busy with holiday customers on December 13 and was staffed with about fifteen employees. John noticed a male and a female customer enter the store and walk to the accessory area at the back of the store. The accessory area contained small merchandise items and accessories for electronic equipment. John noticed these particular customers because one of them was carrying a shopping bag from H&M, a store that was no longer in the mall, a fact to which she had been trained to be alert. A few minutes after the two customers left the accessory area, a store associate went over to the area and noticed that "a few" Beats headphones were missing. John testified that it would have been easy to determine that headphones were missing because the store only put one or two pieces of that type of merchandise out on the floor at a time. After the store associate informed John of the missing merchandise, she pulled up security footage on her laptop. John testified as follows as to what she saw on the security footage, which was not produced for or introduced as evidence at trial: "I saw that the Beats had been . . . picked up, moved around, held in hand, put back, and then one was pulled off and the one toward the back was pulled forward . . . to make it look like there wasn't one missing at the time."

John later testified that Beats headphones had been stolen on December 13.[3] Although John testified on cross-examination that she was able to track what specific items from the store's inventory had been placed on the floor on December 13, and claimed that the store had given the numbers of those items to the police, the state never offered any such numbers or any other inventory records concerning the missing items into evidence.[4] John admitted that, although a store employee had reported the headphones missing on December 13, it was possible that someone else was carrying them around the store at the time of the employee's observation. Moreover, individual pairs of headphones did not have security devices on them that would have sounded an alarm or otherwise alerted store employees if someone were attempting to remove them from the store without paying for them.

John also testified briefly as to events that allegedly occurred on two subsequent days, December 14 and 18. On December 14, she stated, the defendant again

came into the store along with the same female companion who was carrying the same H&M shopping bag and another female. They headed once again to the accessory area of the store, where they looked at headphones. After they left the store, store employees found that "items were missing once again." John called the police and filed a report after the disappearance of the missing merchandise was discovered on December 14. Later, on December 18, the defendant came to the store a third time, along with the same female companion who had accompanied him on December 13, and were in the accessory area of the store. After this visit as well, Beats headphones were reported to be missing. John immediately reported the events of December 18 to the police, who thereafter apprehended the defendant and his companion in the mall and arranged a showup to have John view them. John identified them as the same individuals who had come into her store on December 13, 14, and 18.

At trial, John was shown a still photograph taken from the store's security footage on December 13, in which she pointed out the man and the woman whom she claimed to have stolen Beats headphones on that date. She specifically identified the defendant as the male customer depicted in the photograph. The state also introduced a still photograph taken from the store's security footage on December 14, which John claimed to show the defendant's two female companions on that date but not the defendant.

Keith Leggiadro, a police officer with the Danbury Police Department, also testified for the state. He had responded to a larceny complaint at the Microsoft store on December 14 and received two still photographs of the suspects from John, which had been taken from the store's surveillance video on December 13 and 14. In addition, John showed him the security footage from those two days. As a result of this complaint, Leggiadro began to investigate the alleged incidents on December 13 and 14.[5] Leggiadro responded to the Danbury Fair Mall again on December 18 to assist with an arrest. Upon his arrival, he saw the two individuals in custody, whom he recognized as the male suspect and one of the female suspects shown in the photographs he had been given from the store's security footage on December 13 and 14. The male suspect shown in the photograph from December 13 was the defendant. Upon conducting a search incident to arrest of the defendant's clothing, the police found and seized a pair of pliers and a set of car keys. Officer Leggiadro used the keys to find the associated vehicle. In the vehicle, which the police then searched, they found an H&M shopping bag resembling the one reportedly carried by one of the suspects in the incidents on December 13, 14, and 18.

Other than the two still photographs, which did not show the defendant or either of his companions in pos-

session of Beats headphones or other Microsoft merchandise, the state never introduced any security footage from the Microsoft store into evidence.

After John completed her testimony and the court returned from a lunch break, it announced that it had decided to exclude all of John's testimony as to what she had seen on the unproduced security footage. The state objected to the exclusion of this evidence, and repeated the same objection the following day. The court, however, restated its ruling as follows: "There are three bases under which the evidence is being excluded. The first is that it's unduly prejudicial to the defendant to be defending against evidence which has never been made available to the defendant to review, that the defendant hasn't had an opportunity to see, and it's not available. . . . Basis number two is there really is a best evidence purpose if . . . what's seen on the videotape is what's being relied on, the videotape itself ought to be proffered. . . . And it's the court's ruling that it's not going to fall under any exception to the hearsay rule." When the state asked for clarification as to what evidence had been excluded by virtue of its ruling, the court responded as follows: "What's excluded is any testimony as to what the witness saw on any videotape after the fact."

In its closing argument, the state described the evidence in the following manner.[6] First, it acknowledged the circumstantial nature of its case, and the fact that all testimony as to what John had seen on the unproduced store video had been excluded. Then, however, it argued that the court should consider the actions taken by John and Leggiadro as a result of watching the video, concluding, "Nancy John as well as Officer Leggiadro did watch that videotape, and it was based upon that information . . . as well as other information that they put forth to verify not only the identification but that [the defendant] as well as Ms. Rossman took these items from the store."

Thereafter, the court found the defendant guilty of conspiracy to commit larceny on December 13 but not guilty of larceny on that date or attempted larceny on the following day, December 14. In so ruling, the court specifically stated that the overt act that had been committed in furtherance of the conspiracy was a theft of merchandise from the Microsoft store. The court ruled in relevant part as follows:

"I do find . . . that the state has met its burden in proving beyond a reasonable doubt that [the defendant] is guilty of conspiracy to commit larceny in the sixth degree. And I do that because I found that the state proved beyond a reasonable doubt that [the defendant] with intent [that] . . . the conduct constituting a crime be performed, agreed with one or more persons to engage in or cause the performance of such conduct, and one of them committed an overt act in pursuance

of that conspiracy.

"And the crime that an overt act that the court thinks was proved beyond a reasonable doubt that an overt act was . . . committed in furtherance of is the crime of violating § 53a-125b, larceny in the sixth degree. Namely, that [the defendant] or someone working with [him] with intent to deprive another of property or to appropriate the same to himself wrongfully took, obtained or withheld property from an owner.

"And, specifically, larceny as defined in § 53a-119 subsection 9, shoplifting. That [the defendant] and/or someone he was working in concert with was guilty of shoplifting when they . . . intentionally took possession of any goods, wares or merchandise offered or exposed for sale by any store or other mercantile establishment with the intention of converting the same to his own use without paying the purchase price thereof."

On the basis of these facts, the defendant claims that the evidence was insufficient to establish any of the elements of conspiracy to commit larceny in the sixth degree on December 13. As to the overt act element, the defendant argues that the state failed to establish either that "Beats headphones were missing from the Microsoft store's inventory [or] that defendant or someone working with him took them." We agree that the evidence was insufficient to prove beyond a reasonable doubt that the defendant or his alleged coconspirator committed a larceny on December 13. Because we agree that the evidence was insufficient to establish the overt act of larceny found by the trial court, we do not address the other two elements of conspiracy.[7]

"The standard of review of an insufficiency claim is twofold. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Milardo*, 224 Conn. 397, 402–403, 618 A.2d 1347 (1993) . . . ." (Internal quotations omitted.) *State* v. *Reed*, 56 Conn. App. 428, 432, 742 A.2d 1285, cert. denied, 252 Conn. 945, 747 A.2d 524 (2000).

We begin by setting forth the elements of the crime of conspiracy to commit larceny. General Statutes § 53a-48 (a) defines conspiracy as follows: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." Larceny, the alleged object of the conspiracy in this case, requires proof

that the defendant committed a larceny in violation of General Statutes § 53a-119. The elements of larceny are "(1) the wrongful taking or carrying away of the personal property of another; (2) the existence of a felonious intent in the taker to deprive the owner of [the property] permanently; and (3) the lack of consent of the owner." (Internal quotation marks omitted.) *State* v. *Saez*, 115 Conn. App. 295, 302, 972 A.2d 277, cert. denied, 293 Conn. 909, 978 A.2d 1113 (2009). Larceny by shoplifting under § 53a-119 (9)[8] requires that the state additionally establish that the property taken by the defendant was goods, wares or merchandise exposed for sale within the store. Id. Accordingly, to obtain a conviction for conspiracy to commit larceny in the sixth degree, the state was required to prove beyond a reasonable doubt the following three elements: (1) that the defendant intended to and did agree with one or more other person to engage in larceny; (2) that the defendant specifically intended that every element of the crime of larceny be committed; see *State* v. *Pond*, 315 Conn. 451, 467–71, 108 A.3d 1083 (2015); and (3) that the defendant or a coconspirator committed the overt act of larceny pursuant to such agreement to commit the crime of larceny. Here, the trial court, sitting as the fact finder, specifically found that the overt act was a larceny—"[n]amely, that [the defendant] or someone working with [the defendant] with intent to deprive another of property or to appropriate the same to himself wrongfully took, obtained or [withheld] property from an owner."[9]

After the trial court excluded the evidence of what John saw on the security footage, only the following evidence remained for the court's consideration as to the defendant's alleged commission of conspiracy to commit larceny in the sixth degree on December 13, 2012. John saw two individuals, one of whom was carrying a bag from a store no longer in the mall, walk into the store and head toward the accessory area. Within a few minutes of these individuals leaving the store, a store employee noticed that an unspecified number of Beats headphones were missing from the accessory area. After John later checked the store's inventory, she concluded that "the headphones" had been "stolen."

We conclude that the evidence remaining after the court excluded testimony as to what John had seen on the security footage was insufficient to prove beyond a reasonable doubt that the defendant or his alleged coconspirator stole Beats headphones from the Microsoft store in Danbury on December 13, 2012, either as the substantive crime of larceny in the sixth degree, of which the court acquitted him, or as an overt act in furtherance of the inchoate crime of conspiracy to commit larceny in the sixth degree on that same date. From John's testimony, the fact finder reasonably could have inferred that when she checked the store's inventory

after the defendant and his alleged coconspirator had left the store, she was unable to account for an unspecified number of Beats headphones in the store. The fact finder could not, however, have made an inferential leap from such evidence that the defendant or his alleged coconspirator, who had been in an area where some such headphones were displayed on December 13, but were never seen in possession of any such headphones, let alone in possession of the missing headphones, on that day, had stolen the missing headphones from the store. "Although Connecticut law accepts the practice of allowing inferences based on other inferences . . . [and] . . . [the fact finder] determines if any reasonable inference in a particular case should be drawn . . . [the fact finder] accomplishes this function . . . only where there exists sufficient evidence to support reasonable inferences." (Citation omitted.) *State* v. *Estrada*, 28 Conn. App. 416, 422, 612 A.2d 110, cert. denied, 223 Conn. 925, 614 A.2d 828 (1992).

First, the fact finder would have had to infer that the missing headphones actually had been stolen by someone and removed from the store, rather than lost or misplaced within the store or taken into the possession of another customer who had not yet presented them to a sales clerk to be purchased. However, there was insufficient evidence to support such an inference because John's own testimony established that the opposite was true. According to John, although she believed that the headphones had been stolen, it was possible that another customer was walking around with them at the time their absence from the accessory area was first noticed by another store employee.

Second, and more importantly, the fact finder would have had to infer that the defendant or his codefendant not only took possession of the missing headphones, but removed them from the store with the intent to steal them. Again, however, there was insufficient evidence upon which to base such a conclusion. All that the evidence showed was that the defendant and his alleged coconspirator had engaged in the innocent, ordinary conduct of going to a public area of a retail establishment where goods were displayed for sale some unspecified period of time before particular goods they had not handled, much less taken possession of or concealed from view, were reported missing from that location. To draw such an inference, the fact finder would have had to infer that the innocent, ordinary conduct of the defendant and his alleged coconspirator—walking into the store together, going over to the accessory area, and carrying a shopping bag of a store no longer in the mall—provided a sufficient evidentiary basis to make a reasonable inference that they not only took possession of the headphones but also had stolen headphones once displayed in that location but later found to be missing therefrom. Such conduct was indistinguishable from that of any other shoppers who passed

through that area of the store on a busy day in the Christmas season. Moreover, the state did not present any evidence that anyone saw the defendant or his coconspirator take any headphones from the store or that the police later recovered the missing headphones in their possession or control after the incident.[10]

In sum, it was too great an inferential step for the court to take on this evidence to conclude that the defendant or his alleged coconspirator stole the missing headphones from the store. Cf. *State* v. *Saracino*, 178 Conn. 416, 417–18, 423 A.2d 102 (1979) (testimony of codefendants established scheme of fencing material from store and, although no merchandise was ever recovered, warehouse inventory revealed that merchandise was missing); *State* v. *Saez*, supra, 115 Conn. App. 304 (store employees testified that they saw defendant pushing merchandise out of store). We therefore conclude that the evidence was insufficient to prove beyond a reasonable doubt that the defendant or his alleged coconspirator committed an overt act of larceny. Accordingly, construing the evidence in this case in the light most favorable to the state, and drawing all reasonable inferences therefrom, the trial court could not reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt of conspiracy to commit larceny in the sixth degree beyond a reasonable doubt.

The judgment of conviction is reversed and the case is remanded with direction to render judgment of acquittal on the charge of conspiracy to commit larceny in the sixth degree.

In this opinion the other judges concurred.

[1] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] General Statutes § 53a-125b (a) provides: "A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is five hundred dollars or less."

[3] John testified as follows:

"[The Prosecutor]: And when you checked inventory later, the Beats had been stolen, correct?

"[John]: Yes. We checked immediately."

[4] John also testified as follows:

"[Defense Counsel]: What—do you have any inventory control as to what the specific item is in the front of the store that's for sale, do you?

"[John]: Yes.

"[Defense Counsel]: And what tracking is that?

"[John]: It's all through—through our system, through our—our inventory control systems, and our demo blinders and buckets. Everything is—you know, has serial numbers so we know—we know what items are out on our floor.

"[Defense Counsel]: Okay. But you don't have any—but you—you don't know what specific set was taken on the night of the 13th, do you? Or— Let me withdraw that question. Did you give Danbury police any specific item numbers that were taken on December 13th?

"[John]: Yes. We were able to determine that."

[5] Contrary to John's testimony, Leggiadro testified that John had told him that her fellow employees had thwarted a larceny on December 14.

[6] The state's closing argument was in relevant part as follows: "Your

Honor, you did have an opportunity to sit and watch the testimony of both Nancy John and Officer Leggiadro before this court. They gathered evidence and put it together, and Officer Leggiadro eventually did put together in a warrant affidavit for this defendant for larceny in the sixth degree. I think what's important to remember is that not all crime solving or detection can be based upon direct evidence. In fact, 98 percent of the evidence in criminal courts are circumstantial in nature. And in this case Nancy John did testify before the court that there w[ere] individuals from Microsoft Store as well as herself that were watching this defendant and [Rossman] in the area of these headphones in the back corner of the Microsoft Store. She also indicated in her testimony that this was not a[n] area that had a lot of merchandise stacked around in a confusing set up . . . . She testified that there's a very limited amount of stock that's on the floor in the Microsoft Store. And so if there is an item missing, it is very obvious that an item is missing. She testified that [the defendant] as well as Ms. Rossman were in the back corner of the store, that the merchandise was on the shelf. And they were watching them because there were some things that drew their attention including bags that they were carrying and that they made a bee-line to the area [in the] store that didn't have larger items, but items that could be easily concealed and taken out of the store without much detection. . . . She did testify that the items were on the shelf, that . . . Ms. Rossman and [the defendant] were by the merchandise, that it was there, and then she looked back and it was gone. . . . . However, I . . . would indicate to the court that Nancy John as well as Officer Leggiadro did watch that videotape, and it was based upon that information as well, as well as other information that they put forth to verify not only the identification but that [the defendant] as well as Ms. Rossman took these items from the store. . . . So even though the direct evidence of the video was not able to be produced for the court nor referenced by the witnesses here, there is enough circumstantial evidence to determine that this defendant, in fact, did take these items along with [Rossman] . . . . That's persuasive circumstantial evidence, and there is no doubt that this defendant and [Rossman] took it, and that nobody else could possibly have taken it based upon the evidence that's before this court. I'd ask that the court find the defendant guilty."

[7] The defendant also claims that the there was insufficient evidence to prove an agreement between him and the coconspirator identified in the information, Rossman. To that end, the defendant argues that the state was required to establish beyond a reasonable doubt the identity of his coconspirator as Rossman. The state concedes that it failed to prove that the name of the defendant's alleged coconspirator was Rossman. The state argues, however, that even though it named Rossman in the information as the defendant's alleged coconspirator, the name of a coconspirator is not an element of conspiracy that the state is required to prove beyond a reasonable doubt. The issue, thus, is whether the state is required to establish the identity of a coconspirator whom it specifically named in the information when it does not allege that the defendant conspired with any other named or unnamed coconspirators. Because we have decided that the evidence in the case was insufficient to establish a conspiracy, we will not address whether the state was required to establish the identity of a named coconspirator.

[8] General Statutes § 53a-119 (9) provides in relevant part: "A person is guilty of shoplifting who intentionally takes possession of any goods, wares or merchandise offered or exposed for sale by any store or other mercantile establishment with the intention of converting the same to his own use, without paying the purchase price thereof. . . ."

[9] The state concedes that the trial court was able to convict the defendant of conspiracy to commit larceny in the sixth degree on the basis of an overt act of larceny while acquitting him of the substantive crime of larceny in the sixth degree because the state had not proven whether it was the defendant or one of his alleged coconspirators who had taken the headphones.

[10] The state urges us to consider three additional pieces of evidence, which we decline to do for the following reasons.

First, the state urges us to rely upon testimony that John noticed the defendant and his companion lifting "Beats by Dre" headphones off the shelf, showing them to each other, and talking. This testimony, however, was excluded as part of what John saw only in the unproduced security footage. Later, the state asked John questions about the individuals who had looked at and handled the headphones. Although these questions were not couched in terms of what John had seen in the security footage, the record as a whole makes it clear that John only saw the individuals handle

the headphones when viewing the security footage.

Second, the state argues that after the defendant and his companion left the store, no one else was in the area of the store where the Beats headphones were displayed. The record, however, does not support this claim. At one point in her testimony, John described watching *on the security footage* that no one else was in the area of the Beats headphones before the defendant and his companion walked away. This testimony was excluded, however, and so the state directs our attention to an earlier part of John's testimony, when she testified as follows:

"[The Prosecutor]: So when you saw—after you saw [the defendant] and this other individual in the area of the Beats headphones, and you guys were keeping an eye on them, did you see right after [the defendant] and this other individual was there, before anybody else gets to the Beats head-phones that the Beats were on the shelf?

"[John]: Yes.

"[The Prosecutor]: And just after they walk away from those Beats head-phones, are the Beats missing from the shelf?

"[John]: Yes."

Even if this part of John's testimony had not been excluded as part of what she had seen only on videotape, it would not have supported an inference that no one entered the area after the defendant and his companion left it but before another employee observed that the headphones previously displayed there were missing.

Third, the state asks us to consider that the defendant and his alleged coconspirator returned to the store on December 14 and December 18 and took Beats headphones. However, no thefts of headphones from the store were alleged or proved to have occurred on either later date, and evidence of such later thefts, had it been adduced, would not in any event have proven a theft by the defendant or his companion on December 13.

————————————————————