******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DORAINE REED
(AC 42509)

Elgo, Moll and Lavery, Js.

*Syllabus*

Convicted of the crimes of larceny in the first degree, attempt to commit larceny in the first degree, larceny in the second degree and conspiracy to commit larceny in the first degree in connection with certain financial transactions involving an elderly victim, the defendant appealed to this court. The defendant was hired as an in-home aide for the victim, and increasingly involved herself in the victim's life. A few months after the defendant was hired, the pastor of the defendant's church was granted power of attorney over the victim, and from that point forward the victim's banking activity began to diverge from several long-standing patterns. Increasing sums of money were being withdrawn from the victim's bank accounts and used by the defendant to pay for her various personal expenses. Following a trial, the jury returned a verdict of guilty of all four counts against the defendant. *Held*:

1. The defendant could not prevail on her claim that the trial court improperly instructed the jury as to the wrongfulness element of the offense of larceny, the charge to the jury having adequately conveyed the appropriate levels of intent for both taking and retaining property in accordance with *State* v. *Saez* (115 Conn. App. 295), which outlined the state's obligation to show that the defendant acted with the subjective desire or knowledge that her actions constituted stealing: the court's charge to the jury, when considered as a whole and in light of the penal code's definition of larceny, was sufficient to adequately guide the jury; moreover, the language in the court's charge linking the requirement that the state must prove the defendant intended to permanently deprive the owner of his property with the requirement that the state must prove that the defendant took the property with an unlawful purpose adequately conveyed the requirement that the defendant must have intended to take the property wrongfully, such that the jury properly was apprised of the elements of larceny and the bar that the state had to meet with respect to the specific intent requirement in order to convict the defendant.

2. The defendant could not prevail on her claim that the jury instructions provided by the trial court granted the jury impermissibly broad latitude in considering the possibility of the victim's mental incapacity, that contention not being supported by the plain language of the court's instructions: the jury was informed that, even if it concluded that the victim was mentally incapacitated in any way, the instructions did not mandate a conclusion that the victim could not and did not consent to the defendant's taking of the property, and, by instructing the jury that it "may" determine that the victim's mental incapacity prevented him from consenting to the taking of his property, the charge permitted the jury to exercise its discretion and consider whether the evidence before it supported such a finding; moreover, the jury charge clarified that an owner's inability to consent must be paired with the defendant's awareness of that inability in order to satisfy the wrongfulness requirement of larceny, and the charge contained sufficient safeguards against the jurors improperly drawing conclusions as to the wrongfulness of the defendant's conduct.

Argued September 13, 2021—officially released January 11, 2022

*Procedural History*

Substitute information charging the defendant with the crimes of larceny in the first degree, attempt to commit larceny in the first degree, larceny in the second degree, and conspiracy to commit larceny in the first degree, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *E. Rich-*

*ards, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Richard E. Condon, Jr.*, senior assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, state's attorney, and *Howard S. Stein*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ELGO, J. The defendant, Doraine Reed, appeals from the judgment of conviction, rendered following a jury trial, of larceny in the first degree in violation of General Statutes §§ 53a-119 and 53a-122 (a) (2), attempt to commit larceny in the first degree in violation of General Statutes §§ 53a-49 (a) (2), 53a-119, and 53a-122 (a) (3), larceny in the second degree in violation of General Statutes §§ 53a-119 (1) and (2) and 53a-123 (a) (5), and conspiracy to commit larceny in the first degree in violation of General Statutes §§ 53a-48, 53a-119, and 53a-122 (a) (2). On appeal, the defendant raises two claims of instructional error. First, the defendant asserts that the trial court failed to instruct the jury that the specific intent requirement for any taking or appropriation of property in the charge of larceny must also apply to the "wrongfulness" element of the offense. The defendant also claims that the court improperly instructed the jury regarding the victim's possible mental incapacity and his ability to consent to the transfer of his property to the defendant. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts on the basis of the evidence presented at trial. The victim, Arthur Devack, was an elderly widower who had been dealing with several health problems in the years leading up to his interactions with the defendant. Following a period of treatment for bladder cancer in 2009, the victim fell at his home and subsequently spent time in a rehabilitation facility. Upon his discharge from that facility, the victim's daughter, Cathy Devack,[1] spent several months living with the victim and serving as his caregiver. In February, 2010, Cathy hired the defendant as an in-home aide for her father.[2] Over the next several months, the defendant increasingly involved herself in the victim's life. This included instances of the defendant's friends and family visiting the victim's home, even at times when the defendant was not present. The defendant also appeared without warning at a restaurant where the victim and Cathy were dining.

On April 9, 2010, Cathy and the victim's grandson visited the victim at his home to discuss implementing a power of attorney. The defendant arrived during the meeting, joined the conversation, and then suggested to the victim that his family would "put [him] into a home" or "put [him] away" if the power of attorney came to pass. The victim became agitated and insisted that his family leave the residence. Cathy had no further contact with the victim prior to his death on June 21, 2010.[3]

Shortly after the April 9, 2010 altercation, Robert Genevicz, the pastor of the defendant's church, was granted power of attorney over the victim.[4] From this

point forward, the victim's banking activity began to diverge from several long-standing patterns. On April 12, 2010, the victim's three accounts at the Sikorsky Credit Union (credit union) were closed, and new checking and savings accounts were opened up at the credit union. In June, 2010, an existing reverse mortgage on the victim's house was converted into a lump sum payout of $226,040.10.

At trial, Michele Paige, a forensic fraud examiner affiliated with the state's attorney's office, testified that the victim "was a very modest guy" who "didn't spend frivolously." Yet, in the course of the two months between when Genevicz obtained power of attorney and the victim's death, increasing sums of money were withdrawn from the victim's accounts. These outlays then were used by the defendant to pay for new furniture, maintenance and upkeep on her own properties, and outstanding legal fees. Notably, on June 15, 2010, six days before the victim's death, the victim purchased a 2003 Hummer H2 motor vehicle. Two days later, Genevicz, acting through the power of attorney, sold the vehicle to the defendant. Although Genevicz signed a receipt indicating that the defendant had paid the victim ten dollars less than the original purchase price for the vehicle, no such funds were ever deposited into any of the victim's accounts.

Following investigations by the Trumbull Police Department and the forensic fraud examiner of the Office of the State's Attorney, the defendant was arrested on February 26, 2015, and charged with larceny in the first degree and conspiracy to commit larceny in the first degree. The state filed an amended substitute information on September 18, 2018, charging the defendant with attempt to commit larceny in the first degree and larceny in the second degree, in addition to the two charges set forth in the initial information.[5]

The evidentiary portion of the trial commenced on September 25, 2018, and continued through October 17, 2018. The jury then returned a verdict of guilty of all four counts and the court sentenced the defendant to a total of twenty years of incarceration, execution suspended after nine years, followed by five years of probation. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court improperly instructed the jury as to the wrongfulness element of the offense of larceny. The defendant specifically argues that the court's charge to the jury failed to instruct that in order for the defendant to be convicted of larceny, she must have been found to intend specifically that the taking and appropriation of property be wrongful. We disagree.

The following additional facts are relevant to this

claim. On October 4, 2018, the defendant filed an amended set of preliminary requests to charge. With respect to the intent element of larceny, the defendant requested the following additional language: "I have instructed you that for each count of the information, the state has the burden of proving beyond a reasonable doubt that in regard to any property taken, or attempted to be taken, the defendant must have acted with the specific intent to deprive the owner of the property or to appropriate it to herself or a third person. *In addition to that requirement, the state must also prove beyond a reasonable doubt that the defendant specifically intended to do so 'wrongfully.'* You will recall that I have instructed you that the word 'wrongfully' as used in the larceny statutes means that the property must have been taken without legal justification or excuse. It is not enough for the state to prove beyond a reasonable doubt that a person intentionally took property of another and that the taking was wrongful. A person who takes another's property under a mistaken belief that such taking is not wrongful does not possess the intent required for a conviction of larceny. The state must also prove beyond a reasonable doubt that the defendant had the intent, or conscious objective to take the property 'wrongfully,' as I have defined that term for you." (Emphasis added.) In support of her request, the defendant cited to General Statutes §§ 53a-5, 53a-6 (a) (1), and 53a-119, as well as *State* v. *Saez*, 115 Conn. App. 295, 302, 972 A.2d 277, cert. denied, 293 Conn. 909, 978 A.2d 1113 (2009).[6] The defendant also described, as a factual basis underlying the request, "[e]xpected evidence pertaining to appropriation of the property of [the victim]."

The court's eventual charge to the jury instructed in relevant part that "a person commits larceny with intent to . . . deprive another of property or to appropriate that property to himself or a third person" when "he wrongfully takes, obtains, or withholds such property from an owner. The state must prove that the property was taken with the specific intention of depriving the owner . . . of it or appropriating it to himself or to some third person. To intend to deprive another of property means, insofar as it applies here, intending to withhold it or cause it to be withheld from him permanently or for so long a time or under such circumstances that the major portion of its economic value or benefit is lost to him." The court further charged: "I remind you that the burden of proving intent beyond a reasonable doubt is on the state. It is essential that the state must prove beyond a reasonable doubt that the person who took the property had the unlawful purpose, that is, to permanently deprive the owner of it, or the intention in his or her mind at the time an attempt to take the property was made. The state must also show the attempted taking was wrongful. Larceny includes any wrongful taking of property away from

the possession or control of the person entitled to it, including taking by force. The word wrongfully as used in the statute means that the property must have been taken without legal justification or excuse, color of right, or consent of the owner. When property is obtained with the knowing consent of the owner, the taking is not wrongful."

The defendant objected to the court's instruction before and after the court delivered its charge to the jury. On October 18, 2018, the defendant moved for a new trial due to the court's alleged failure to properly instruct the jury on the intent requirement as it pertained to the wrongfulness element of larceny. The court denied that motion before sentencing the defendant on December 12, 2018.

"We review the defendant's claim of instructional impropriety pursuant to the following standard of review. The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Lavigne*, 307 Conn. 592, 599–600, 57 A.3d 332 (2012).

"[T]he essential elements of larceny are: (1) the wrongful taking or carrying away of the personal property of another; (2) the existence of a felonious intent in the taker to deprive the owner of [the property] permanently; and (3) the lack of consent of the owner." (Internal quotation marks omitted.) *State* v. *Adams*, 327 Conn. 297, 305–306, 173 A.3d 943 (2017). "Because larceny is a specific intent crime, the state must show that the defendant acted with the subjective desire or knowledge that his actions constituted stealing. . . . Larceny involves both taking and retaining. The criminal intent involved in larceny relates to both aspects. The taking must be wrongful, that is, without color of right or excuse for the act . . . and without the knowing consent of the owner. . . . The requisite intent for retention is permanency." (Internal quotation marks omitted.) *State* v. *Saez*, supra, 115 Conn. App. 302.

In asserting that the specific intent requirement for any taking or appropriation of property in the charge of larceny must also apply to the "wrongfulness" element of the offense, the defendant relies on *Saez*. She

essentially argues that the court's instruction improperly obviated the state's obligation under *Saez* to "show that the defendant acted with the subjective desire or knowledge that his actions constituted stealing." Id. We disagree. The charge to the jury adequately conveyed the appropriate levels of intent for both taking and retaining property in accordance with *Saez*. Moreover, nothing in *Saez* extends this requirement to mandate language linking specific intent and wrongfulness. We are convinced that the court's charge to the jury, when considered as a whole and in light of the penal code's definition of larceny, was sufficient to adequately guide the jury.

In this regard, we find particularly instructive our earlier decision in *State* v. *Flowers*, 69 Conn. App. 57, 797 A.2d 1122, cert. denied, 260 Conn. 929, 798 A.2d 972 (2002). In *Flowers*, the defendant was charged with robbery in the first degree, for which larceny is a predicate offense. Id., 67–68. On appeal, the defendant claimed that the trial court erred in failing to provide the exact statutory definition of larceny in its charge to the jury. Id., 67. Although this court described the instructions as "imperfect, or technically incomplete," it nevertheless concluded that the instructions adequately "conveyed the essential characteristics of larceny" to the jury. Id., 70–71.

Although the trial court in the present case did not adopt the precise language requested by the defendant, the court instructed: "I remind you that the burden of proving intent beyond a reasonable doubt is on the state. It is essential that the state must prove beyond a reasonable doubt that *the person who took the property had the unlawful purpose, that is, to permanently deprive the owner of it, or the intention in his or her mind at the time an attempt to take the property was made. The state must also show the attempted taking was wrongful. Larceny includes any wrongful taking of property away from the possession or control of the person entitled to it, including taking by force. The word wrongfully as used in the statute means that the property must have been taken without legal justification or excuse, color of right, or consent of the owner.*" (Emphasis added.) In our view, this language linking (1) the requirement that the state must prove the defendant intended to permanently deprive the owner of his property with (2) the requirement that the state must prove that the defendant took the property with an unlawful purpose adequately conveyed the requirement that the defendant must have intended to take the property wrongfully. In light of that language, we are convinced that the jury properly was apprised of the elements of larceny and the bar that the state had to meet with respect to the specific intent requirement in order to convict the defendant.

We also agree with the state that, in essence, the

defendant's request to charge on the issue of intent amounted to no more than a denial of the requisite intent. This court has held that "a denial of the intent to wrongfully withhold [property] . . . is not a legally recognized defense"; (citation omitted) *State* v. *Kurrus*, 137 Conn. App. 604, 612, 49 A.3d 260, cert. denied, 307 Conn. 923, 55 A.3d 566 (2012); and, accordingly, does not merit a specific charge to that effect. We, therefore, reject the defendant's claim.

II

The defendant next argues that the jury instructions provided by the court granted the jury impermissibly broad latitude in considering the possibility of the victim's mental incapacity. We agree with the state that the defendant's contention is not supported by the plain language of the instruction.

The relevant portion of the court's charge to the jury stated: "When property is obtained with the knowing consent of the owner, the taking is not wrongful. A person acts knowingly with respect to his or her conduct when he or she is aware of the nature of the conduct. However, the owner's mental incapacity, if any, may be considered by you as evidence of an inability to knowingly consent to the defendant's obtaining the property. When the defendant is aware of the owner's inability to knowingly consent, the obtaining of the property would be nonconsensual and wrongful. If you find that the complainant did not knowingly consent to the defendant's obtaining the property and the defendant was aware of his inability to knowingly consent, the obtaining of the property would be nonconsensual and wrongful. These are questions of fact for you to decide. You may consider all the evidence presented and give to it whatever credibility and weight you deem is appropriate in accordance with my instructions." At the close of trial, the defendant took exception to this portion of the charge on the ground that the charge wrongly "equate[d] mental incapacity in any degree with an inability to knowingly consent to someone taking the property,"[7] which the court noted. The defendant took a postcharge exception on similar grounds.

On appeal, the defendant disagrees with the notion that "any" mental incapacity could have been considered by the jury in determining whether the victim had the ability to consent.[8] We first note that, as the state points out, the jury was informed that, even if it concluded that the victim was mentally incapacitated in any way, the instructions did not mandate a conclusion that the victim could not and did not consent to the defendant's taking of the property. By instructing the jury that it "may" determine that mental incapacity on the part of the victim prevented the victim from consenting to the taking of his property, the charge permitted the jury to exercise its discretion and consider whether the evidence before it supported such a find-

ing.[9] In addition, the charge clarified that an inability to consent must be paired with the defendant's awareness of said inability in order to satisfy the wrongfulness requirement of larceny. In this respect, the charge to the jury contained sufficient safeguards against the jurors improperly drawing conclusions as to the wrongfulness of the defendant's conduct. In light of the foregoing, we conclude that the defendant has not established instructional error in the present case.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] For purposes of clarity, we refer to the victim's daughter by her first name in this opinion.

[2] At the time of her placement with the victim, the defendant recently had been hired by Helping Hands, an agency that provides in-home care for senior citizens. Shortly after the defendant was assigned to the victim's care, the victim manifested his intent to hire the defendant directly. Cathy informed Helping Hands that the victim would no longer be utilizing the company's services. Although the owner of Helping Hands passed this information on to the defendant, the defendant did not respond and thereafter had no further contact with Helping Hands. As a result, the defendant's initial criminal background check was never completed by Helping Hands.

[3] Following the April 9, 2010 incident, the defendant filed a complaint against Cathy with the Trumbull Police Department, in which she alleged that Cathy had assaulted the victim. Cathy was arrested shortly thereafter and made subject to a protective order that prevented her from having any contact with the victim. The charges against Cathy were dropped after the victim's death.

[4] Genevicz' conduct with respect to the victim was the subject of a separate criminal proceeding, and the jury in the present case was not privy to any information concerning that matter.

[5] The state also filed two substitute informations on March 18, 2015, and April 26, 2017. The information dated March 18, 2015, contained no material changes with respect to the initial information. The information dated April 26, 2017, charged the defendant with attempt to commit larceny in the first degree and larceny in the second degree in addition to the initial charges of larceny in the first degree and conspiracy to commit larceny in the first degree.

[6] General Statutes § 53a-5 provides: "When the commission of an offense defined in this title, or some element of an offense, requires a particular mental state, such mental state is ordinarily designated in the statute defining the offense by use of the terms 'intentionally', 'knowingly', 'recklessly' or 'criminal negligence', or by use of terms, such as 'with intent to defraud' and 'knowing it to be false', describing a specific kind of intent or knowledge. When one and only one of such terms appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears."

General Statutes § 53a-6 (a) (1) provides in relevant part: "A person shall not be relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief of fact, unless . . . [s]uch factual mistake negates the mental state required for the commission of an offense . . . ."

[7] Importantly, the defendant conceded at trial that the victim's mental capacity "[could] be considered on the issue of" the "inability to knowingly consent to the [transfer of property]."

[8] In particular, the defendant takes issue with the trial court's reliance on *State* v. *Calonico*, 256 Conn. 135, 770 A.2d 454 (2001), insofar as *Calonico* turned on the sufficiency of the evidence in that case (as opposed to the appropriateness of a jury instruction) and its partial reliance on case law from other states. We find these distinctions immaterial. The passages the court cited during its colloquy with defense counsel discuss the intent required to sustain a conviction of larceny, which does not hinge on the particular type of error alleged on appeal. See id., 160–63. Additionally, although the portion of *Calonico* that discussed mental incapacity did cite to case law from outside of this state; id., 153–55; it still constitutes binding authority from the highest court in this state. See *State* v. *Siler*, 204 Conn. App. 171, 178, 253 A.3d 995 (2021) ("[a]s an intermediate appellate tribunal, this court is not at liberty to modify, reconsider, or overrule the precedent

of our Supreme Court").

<sup>9</sup> We emphasize that the two claims raised by the defendant in this appeal concern the propriety of the jury instructions. The defendant has not disputed the sufficiency of the evidence adduced at trial in either her motion for a new trial or her appeal before this court.